# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40042

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2020

Lyle W. Cayce
Clerk

CARLOS A. MARTINEZ,

> Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:17-CV-11

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Carlos Martinez sued the United States for damages under the Federal Tort Claims Act (FTCA) for injuries resulting from an automobile collision allegedly caused by United States Customs and Border Protection Agent Fabian Rocha. The district court granted summary judgment in favor of the United States. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40042

## I.

This case arises out of an automobile collision that occurred on January 26, 2016 in Brownsville, Texas. While in pursuit of a suspected drug smuggler, United States Customs and Border Protection Agent Fabian Rocha turned right onto Old Military Road when his vehicle struck Carlos Martinez's vehicle, which was stopped at a stop sign near the intersection of Highway 281 and Old Military Road. Martinez sued the United States for damages under the Federal Tort Claims Act (FTCA) for injuries resulting from that collision, alleging that Agent Rocha was negligent.

The Government moved to dismiss for failure to state a claim, or alternatively, for summary judgment, asserting as a defense the Texas Emergency Vehicle Privilege, a statutory privilege set forth in §§ 546.001–.005 of the Texas Transportation Code. The United States argued that the asserted privilege precluded liability for Martinez's FTCA claim of negligence unless the facts of the case demonstrate that Agent Rocha acted with reckless disregard at the time of the accident.

The district court granted summary judgment for the Government, finding that Agent Rocha's "activation of the vehicle's emergency lights and application of brakes do not support a finding of reckless disregard as to Agent Rocha's actions." Because it concluded that Martinez failed to raise material issues of fact to infer that Agent Rocha acted with reckless disregard, the district court held Agent Rocha's actions were privileged under the Texas Transportation Code. Martinez appealed.

Martinez and the United States agree that the Texas Transportation Code privilege applies to Agent Rocha's conduct and shields the United States from FTCA liability unless Agent Rocha acted with "reckless disregard for the

safety of others."[1] Tex. Transp. Code § 546.005. Further, it is undisputed that Agent Rocha, a U.S. Customs and Border Protection Agent, was operating an authorized emergency vehicle in pursuit of a suspected drug smuggler at the time of the collision. Thus, as it was before the district court, the sole issue on appeal is whether Martinez presented evidence that Agent Rocha acted with reckless disregard.

On appeal, Martinez challenges the district court's ruling that Agent Rocha's conduct was not reckless as a matter of law. Specifically, Martinez contends there remains a factual dispute as to whether Agent Rocha failed to slow down and look before turning his vehicle at the intersection, which he asserts is material to the reckless disregard determination.

## II.

We review a summary judgment de novo, applying the same standards as the district court. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citing *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018)). "Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] Importantly, Martinez does not dispute the applicability of the statutory privilege asserted by the United States. In fact, Martinez states in his brief that the Texas Transportation Code §§ 546.001–.0005 "supplies the law applicable to the emergency situation in this case." It was not until oral argument that he vaguely expressed his uncertainty regarding the United States' invocation of the emergency vehicle privilege. We do not consider arguments first raised on appeal. *See Estate of Duncan v. Comm'r*, 890 F.3d 192, 202 (5th Cir. 2018); *see also Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 623 (5th Cir. 2007) ("[W]e do *not* consider issues presented for the first time at oral argument."). We note, however, that while the Government may not rely on state-defined immunities in FTCA cases, *United States v. Olson*, 546 U.S. 43, 45–46 (2005), it may assert state law enforcement privileges as a defense to FTCA claims in certain circumstances, *see Villafranca v. United States*, 587 F.3d 257, 262–64 (5th Cir. 2009).

No. 19-40042

In reviewing summary judgment, we "construe all facts and inferences in the light most favorable to the nonmoving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

## III.

"The FTCA is a waiver of sovereign immunity that allows a plaintiff to bring a civil action for damages against the Government." *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009) (citing 28 U.S.C. §§ 1346(b)(1), 2674). Under the FTCA, district courts have jurisdiction over claims against the United States for damages "caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "On those claims, the United States is liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Mendez v. Poitevent*, 823 F.3d 326, 334 (5th Cir. 2016) (quoting 28 U.S.C. § 2674). In the instant case, Texas law governs liability because the collision occurred in Texas.

Pursuant to the Texas Transportation Code, authorized emergency vehicle operators are entitled to various privileges when acting in emergency situations. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 428 (Tex. 1998) (citing Tex. Transp. Code § 546.001–.005). The conditions that give rise to these privileges include, *inter alia*, "responding to an emergency call" and "pursuing an actual or suspected violator of the law." *See* Tex. Transp. Code §§ 546.002(b)(1)–(2). In these enumerated emergency situations, authorized emergency vehicle operators are permitted to:

> (1) park or stand, irrespective of another provision of this subtitle;
> (2) proceed past a red or stop sign signal or stop sign, after slowing as necessary for safe operation;

No. 19-40042

(3) exceed a maximum speed limit . . . as long as the operator does not endanger life or property; and

(4) disregard a regulation governing the direction of movement or turning in specified directions.

*Id.* § 546.001. In sum, in designated emergency situations, the operator of an authorized emergency vehicle is entitled to privileges, which include the authority to operate the vehicle in certain otherwise-illegal ways.

These privileges are not unqualified, however, and do not relieve the driver of an emergency vehicle from "the duty to operate the vehicle with appropriate regard for the safety of all persons," or "the consequences of reckless disregard for the safety of others." *Id.* § 546.005; *see also Hernandez v. United States*, No. 1:17-CV-00087, 2018 WL 4103015, at *4 (S.D. Tex. July 2, 2018) (noting that § 546.005 "cabins the privilege of section 546.001").

The Texas Supreme Court held that this limiting provision "imposes a *duty* to drive with [appropriate][2] regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct." *Martin*, 971 S.W.2d at 431 (interpreting the predecessor of section 546.005). Accordingly, operators of emergency vehicles are not subject to liability for mere negligence. *See id.* Rather, the Texas Transportation Code only imposes liability for "reckless" conduct, which requires a plaintiff to show that the emergency vehicle operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Id.* at 430. This "requires a showing of more than a momentary judgment lapse" or "mere failure of judgment." *Id.*

---

[2] Section 546.005, effective September 1, 1995, replaced former section 24(e), article 6701d, and slightly revised the language of the statute by substituting "due regard" with "appropriate regard." *See Green v. City of Friendswood*, 22 S.W.3d 588, 593 (Tex. App.— Houston [14th Dist.] 2000, pet. denied). The substitution lends credence to the view "that the Legislature intended for emergency vehicle operators in emergency situations to be cognizant of public safety, but only intended to impose liability for reckless conduct." *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998).

No. 19-40042

The underlying policy for providing limitations to liability in this narrow context is the need "to balance the safety of the public with the need for prompt responses to police, fire, and medical emergencies." *Martin*, 971 S.W.2d at 429. "The reckless disregard test . . . is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public's safety to the extent practicable." *Id.* at 430.

Martinez has not shown that a genuine dispute of fact exists with respect to whether Agent Rocha acted with reckless disregard for the safety of others. Shortly before the collision, Agent Rocha was notified that nearby agents observed subjects loading bales of marijuana into a white Chevy Suburban and that the driver of the vehicle was fleeing the scene. While in pursuit of the Chevy on Highway 281, Agent Rocha witnessed the suspect crash into a ditch and flee the vehicle near the intersection of Highway 281 and Old Military Road. This prompted Agent Rocha's instant decision to turn right onto Old Military Road in an attempt to apprehend the suspect. Shortly after turning, Agent Rocha's vehicle struck Martinez's vehicle, which was stopped on Old Military Road near the intersection of Highway 281.

We conclude that Agent Rocha's conduct does not give rise to a finding of reckless disregard. Instead, some of Agent Rocha's actions evince his concern for the safety of others during the emergency pursuit. First, it is uncontroverted that Agent Rocha was responding to an emergency call with his emergency lights activated. Although he did not activate his sirens, Agent Rocha's conduct in this regard was in accordance with Texas law. *See* Tex. Transp. Code § 546.003 (The operator must use, at his discretion and in compliance with local government or department policy, appropriate audible *or* visual signals.) (emphasis added); *see also Hernandez*, 2018 WL 4103015, at *5 ("The statute [] requires only audible or visual signals, not both.").

6

No. 19-40042

Additionally, Agent Rocha slowed down prior to turning his vehicle onto Old Military Road. The video recording establishes that, while traveling in the proper direction of traffic on Highway 281, Agent Rocha applied his brakes as he reached the intersection and prior to turning right onto Old Military Road. Thus, Martinez's contention on appeal that a genuine issue of fact remains as to whether Agent Rocha slowed down prior to turning is belied by the video evidence. Collectively, this evidence is generally sufficient to demonstrate that Agent Rocha did not act with reckless disregard for the safety of the public. *See Estrada v. United States*, No. 2:13-CV-139, 2014 WL 5823107, at *7 (S.D. Tex. Nov. 7, 2014); *Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 841–42 (Tex. App.—Corpus Christi 2011, no pet.) (collecting cases).

Next, Martinez asserts on appeal that there is a disputed fact issue whether Agent Rocha acted recklessly by turning without looking, thus posing a known, high degree of risk of serious injury. Martinez cites Agent Rocha's testimony that he experienced "tunnel vision," admitting that he kept his eyes on the suspect and that he did not see Martinez until he turned right onto Old Military Road and collided with Martinez. Agent Rocha did, in fact, testify that he did not see Martinez's vehicle "until the time of impact." However, under these distinct facts, this contention alone is not sufficient to raise a genuine issue of material fact as to whether Agent Rocha's conduct was reckless. *See City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *4–5 (Tex. App.—San Antonio May 11, 2011, pet. denied) (mem. op.). Agent Rocha was not proceeding through an intersection against a red stop signal or proceeding through a stop sign. *Cf. Perez v. Webb County*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied). Instead, the collision occurred as Agent Rocha was turning right onto Old Military Road. While Martinez alleges that the collision was caused by the negligent acts of Agent Rocha, mere negligence is not enough to overcome the Texas privilege. *See Martin*, 971 S.W.2d at 431;

7

No. 19-40042

*Hernandez*, 2018 WL 4103015, at *6; *Bailey v. United States*, No. W-15-CV-056, 2016 WL 6086117, at *4 (W.D. Tex. Jan. 11, 2016); *Estrada*, 2014 WL 5823107, at *5.

Indeed, the facts in this case are analogous—and less egregious—to cases that Texas courts have repeatedly held were insufficient to raise a fact issue as to reckless disregard. *See, e.g.*, *Varela*, 2011 WL 1852439, at *5 (holding officer's failure to adhere to policy requiring emergency vehicles to come to a complete stop and failure to remember looking both ways before entering intersection did not raise fact issue as to whether officer acted with reckless disregard for safety of others); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 100 (Tex. App–Houston [1st Dist.] 2008, no pet.) (holding evidence that officer entered a blind intersection, that plaintiff's vehicle sustained damage, and conclusory statements that the officer was driving at a high rate of speed was insufficient to raise fact issue); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701–02 (Tex. App.–Austin 2005, no pet.) (holding witnesses' statement that firefighter entered intersection without stopping and witness did not hear brakes being applied was not evidence of recklessness). *But see City of Pasadena v. Belle*, 297 S.W.3d 525, 535 (Tex. App.—Houston 2009, no pet.) (finding a fact issue under section 546.005 because the officer was subjectively aware that his actions posed a risk of injury, nevertheless, he accelerated his vehicle to almost twice the posted speed limit without activating his vehicle's audible or visual signals).

Although a driver of an emergency vehicle should avoid negligent behavior, he is subject to liability only if he acts with reckless disregard for the safety of others. *Martin*, 971 S.W.2d at 430; *see also* § 546.005(2). Accordingly, in order to circumvent the asserted privilege, Agent Rocha's conduct must rise to the level of reckless disregard, which requires more than "mere negligence" or a "momentary lapse in judgment." The uncontroverted evidence indicates

No. 19-40042

that Agent Rocha activated his vehicle's emergency lights and applied his brakes as he neared the intersection. The parties agree that once the suspect changed direction and crashed into the ditch, Agent Rocha had a matter of seconds to decide to turn onto Old Military Road.[3] Under these circumstances and the arguments presented, Martinez has not established the existence of a genuine fact issue regarding whether Agent Rocha acted with reckless disregard for the safety of others. Summary judgment was proper.

## IV.

Martinez fails to raise a genuine dispute of material fact as to whether Agent Rocha acted with reckless disregard under Texas law. Thus, Agent Rocha's conduct was within the scope of the Texas Transportation Code's emergency vehicle operator privilege, precluding liability under the FTCA. For the foregoing reasons, the district court's summary judgment is AFFIRMED.

---

[3] Counsel for Martinez—again—attempted to change his position at oral argument. While Martinez initially asserted that Agent Rocha had approximately 4 seconds to decide to turn right onto Old Military Road, at oral argument his calculation inexplicably doubled.

No. 19-40042

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

In deciding whether there is a disputed material fact issue precluding summary judgment, "all of the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). If a reasonable finder of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The magistrate judge recommended finding that it was genuinely disputed whether Agent Fabian Rocha acted with a reckless disregard for the safety of others during the pursuit of a suspected drug trafficker. I agree that under these facts, a trier of fact should determine whether Rocha acted with reckless disregard or whether his actions were protected by the Texas-state-law privilege for authorized emergency vehicles under Texas Transportation Code §§ 546.001-.005.[1] The district court found that Rocha did not act with reckless disregard of others by relying on Rocha's activation of the vehicle's emergency lights and application of the brakes. The majority holds that

---

[1] Studies exemplify the need for this qualified privilege, which "balance[s] the safety of the public with the need for prompt responses to police, fire, and medical emergencies." *City of Amarillo v. Martin*, 971 S.W.2d 426, 428 (Tex. 1998). Last year, the Los Angeles Times and ProPublica published a study about Border Patrol vehicle pursuits occurring from 2015 to 2018 along the border in California, Texas, New Mexico, and Arizona. Kavitha Surana et al., *Chasing Danger*, LA TIMES, April 4, 2019, https://www.latimes.com/projects/la-me-ln-border-patrol-immigrant-chases-crashes/. Out of 504 pursuits analyzed, at least 250 people were injured, and 22 others died. *Id.* Border patrol agents found drugs in nine cases and personal guns in four. *Id.* According to the Department of Justice, 762 people in Texas died in police pursuit-related fatalities from 1996 to 2015. Brian A. Reaves, Bureau of Justice Statistics, *Police Vehicle Pursuits, 2012-2013*, 2017 at 13, *available at* https://www.bjs.gov/content/pub/pdf/pvp1213.pdf. The fatalities included four officers, 581 people in the chased vehicles, 144 in bystander vehicles, and 33 others. *Id.*

Rocha's use of emergency lights, application of brakes, and quick decision-making is sufficient to establish that Rocha was not reckless as a matter of law. In reaching this conclusion, the majority primarily relies on Rocha's deposition and a grainy, pixelated video that continually zooms in and out of focus.

Neither Rocha's deposition nor the video can be relied upon to conclusively establish that Rocha acted without reckless disregard. The Texas Supreme Court holds that recklessness requires "proof that a party knew the relevant facts" creating the danger and "did not care about the result." *See City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 (Tex. 2006). Our duty at this stage is not to weigh the evidence to determine whether Rocha was reckless; instead, we must determine if sufficient evidence exists to create a material question of fact on the issue of whether Rocha's conduct constitutes a reckless disregard for the safety of others. As explained below, I conclude that sufficient evidence exists.

Rocha admitted to "experienc[ing] tunnel vision" after he made visual contact with the suspect's vehicle on Highway 281. Rocha further described "tunnel vision" as losing perception of his surroundings at the intersection[2] of Old Military Road and Highway 281:

[Martinez's Counsel]: Explain to me what that is, tunnel vision.

[Rocha]: Tunnel vision is, you know, when you keep your eyes on a certain -- on a certain object or objects in front of you. And by doing that, you lose perception of what's around. And I was keeping my eyes at the [suspect's] vehicle -- on the vehicle and the subject. And when I decided to make that right turn, you know, [Martinez's] vehicle was there.

---

[2] An intersection is defined as "the common area at the junction of two highways, other than the junction of an alley and a highway." Tex. Transp. Code § 541.303.

Texas jurisprudence consistently suggests that when emergency vehicle operators respond to an emergency call or pursue a suspected violator of the law, operators who properly invoke the Texas privilege *testified* or *demonstrated* that they had an *actual awareness* of their surroundings prior to the collision. *See, e.g., Perez v. Webb Cty.*, 511 S.W.3d 233, 237 (Tex. App. 2015) (officer "believed the intersection was clear as he approached" because "he saw no vehicles in the intersection when he looked left and right"); *Quested v. City of Houston*, 440 S.W.3d 275, 285–86 (Tex. App. 2014) (officer determined the risk of harm to others from his driving was minimal "considering that traffic was light, the weather was clear, the streets were dry, and there was plenty of daylight; and [officer] was careful to watch for other drivers and pedestrians"); *Texas Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 836 (Tex. App. 2011) (multiple state troopers stated that traffic was clear to the left, right, and across the intersection prior to entering and colliding with plaintiff's car); *City of San Angelo Fire Dep't v. Hudson,* 179 S.W.3d 695, 701 (Tex. App. 2005) (firetruck operator testified that he significantly slowed down as he reached the intersection and "had his foot on the brake when proceeding through the intersection and applied his brake harder *when he observed* [plaintiff's] car heading towards the intersection") (emphasis added); *Smith v. Janda,* 126 S.W.3d 543, 545–46 (Tex. App.—San Antonio 2003, no pet.) (ambulance driver with emergency lights and siren activated "slowed down and looked around" as he approached the intersection and entered after "seeing that all traffic had stopped or yielded to him"); *Harris Cty. v. Spears,* No. 14-17-00662-CV, 2018 WL 4571841, at *5–6 (Tex. App. Sept. 25, 2018) (deputy officer slowed his patrol car and looked both ways to see traffic had stopped and proceeded through the intersection); *Hernandez v. United States,* No. 1:17-CV-00087, 2018 WL 4103015, at *1 (S.D. Tex. July 2, 2018) (border patrol agents followed the suspect's vehicle for several streets, momentarily lost visual of the vehicle,

and regained visual after the suspect already hit plaintiff's vehicle); *City of San Antonio v. Reyes*, No. 04-16-00748-CV, 2017 WL 3701772, at \*3 (Tex. App.—San Antonio Aug. 23, 2017) (officer with engaged sirens and lights slowed as he approached traffic lights and "proceeded through each intersection only after visually checking each for traffic"); *Bailey v. United States,* No. W-15-CV-056, 2016 WL 6086117, at \*1 (W.D. Tex. Jan. 11, 2016) (officer "took several steps that illustrate he cared about the safety of others" and made "attempts to avoid colliding with" plaintiff when officer realized a collision was imminent); *Estrada v. United States*, No. 2:13-CV-139, 2014 WL 5823107, at \*2 (S.D. Tex. Nov. 7, 2014) (border patrol agent testified that he slowed down to turn right onto the grassy median, did not see any cross-traffic, and attempted to turn sharply to avoid collision with plaintiff); *City of Laredo v. Varela,* No. 04-10-00619-CV, 2011 WL 1852439, at \*3 (Tex. App. May 11, 2011) (police officer testified that he could not recall if he looked both ways but stated it was his standard practice to always do so when approaching an intersection); *Crain v. Whitlock*, No. 05-98-00229-CV, 2000 WL 576329, at \*5 (Tex. App. May 15, 2000) (deputy sheriff slowed as he approached intersection and looked carefully to see that all traffic had stopped).

Here, there is evidence that Rocha focused on the suspect's vehicle to the exclusion of all else, including the potential danger to others. The video depicts at least a dozen cars traveling along Highway 281 before the collision at approximately 8:24 a.m. on a Tuesday morning, a time when many people are commuting to work. Martinez also testified that the weather was not foggy, and he had a clear view of his surroundings. The video also shows that Rocha was not the only Border Patrol agent pursuing the suspect's vehicle because another agent's vehicle was seen driving behind Rocha prior to Rocha's turn onto Old Military Road. While traveling toward the suspect with "tunnel vision," Rocha acknowledged that he could not recall how fast his vehicle was

traveling on Highway 281 prior to turning on Old Military Road. Martinez, however, maintained that Rocha gave "no indication until the last second that [Rocha] was going to turn," that "[Rocha] was going too fast to make a turn," and that Rocha was estimated to be traveling at 65 or 70 miles per hour. Martinez stated that he knew Rocha was not going to be able to make the turn and accordingly prepared for the impact of the oncoming collision. The collision was severe enough that Rocha sustained a "head injury" which caused him to miss a couple days of work and experienced back and neck problems. Martinez suffered a fractured left wrist and his car was totaled. After investigating the accident, Rocha's employer gave him a written reprimand for failing to exercise due caution while operating a government-owned vehicle.

While these factors are not singularly dispositive, a reasonable trier of fact looking at the totality of the circumstances—including Rocha's admitted lack of perception with regard to other vehicles at a busy intersection, his lack of awareness regarding the speed of his own vehicle, the fact that there were clear weather conditions, and the fact that his visibility was not obstructed— could conclude that Rocha acted with reckless disregard for the safety of others. The majority cites to *City of Pasadena v. Kuhn,* 260 S.W.3d 93, 95 (Tex. App. 2008) for the proposition that emergency vehicle operators who slow down while entering a blind intersection with activated lights and sirens fail to create a material factual dispute for recklessness. However, the Texas code does not grant a privilege to emergency vehicle operators to focus exclusively on the pursuit of a suspect and to fail to consider the safety and welfare of innocent bystanders, pedestrians, or other drivers on the road. Based on the record before us, a reasonable factfinder could conclude that Rocha knew he was traveling on a busy road during morning commuting hours, but he made the decision to turn at the intersection without any regard to his immediate surroundings and safety of other drivers on the road. *See Hartman,* 201

S.W.3d at 672 (reckless disregard "require[s] proof that a party knew the relevant facts but did not care about the result").

Indeed, this is a close case because the line between negligence and recklessness is often difficult to determine. But, based on the genuinely disputed facts and construing factual inferences in Martinez's favor, I would find that the United States has not disproved recklessness as a matter of law and that the determination should be reserved for a fact finder.